Lomax, J.
delivered the opinion of the court. The question of the competency of testimony may depend upon facts extraneous and collateral to the testimony; or the matter and manner of the testimony may be such as to render it inadmissible. To make dying declarations receivable as evidence in any case, it has been laid down, that it must appear that the deceased was conscious of his being in a dying state, at the time he made them. This inquiry into the consciousness of the deceased, is collateral to the evidence of the dying declarations themselves, and the judgement to be pronounced upon it, depends upon proofs which may be wholly distinct from and unconnected with the declarations. So, all testimony presupposes the sanity of the witness who deposes, and whenever the question of sanity is raised, for the purpose of excluding the evidence which is offered, it must depend upon collateral proofs. These questions as to the competency or admissibility of testimony, at whatever stage of the trial they may be raised, (though regularly they *794 ought to precede the introduction of the testimony objected to) are referred to the decision of the judge. “ As it is the province of the jury to consider what degree of credit ought to be given to evidence, so it is for the court alone to determine, whether a witness is competent, or the evidence admissible. Whether there is any evidence is a question for the judge; whether it is sufficient is for the jury. And whatever antecedent facts are necessary to be ascertained, for the purpose of deciding the question of competency, as for example, whether a child understands the nature of an oath, or whether the confession of a prisoner was voluntary, or whether declarations, offered in evidence as dying declarations, were made under the immediate apprehension of death; these, and other facts of the same kind, are to be determined by the court, and not by the jury.” 1 Phil. L. Ev. 13. (edi. 1816). Clayton v. Anthony, 6 Rand. 299. Chaney v. Saunders, 3 Munf. 51. This preliminary adjudication of the court upon the question as to the admissibility of the testimony, in case the evidence be allowed, has decided nothing in regard to its credibility. That peculiar province still remains for the jury. It is every day’s practice to admit evidence as competent, which the jury have no hesitation in disbelieving. The court may decide, upon examination of proofs, that a witness is not incompetent for want of reason or understanding: the jury may, notwithstanding, determine within their province, what is the weight of his testimony, and may graduate the credit they will repose in it, from the point of total disbelief to that of the most implicit confidence., If in the judgement pronounced by the court, upon the question of competency, any error be committed, a bill of exceptions, embodying all the facts and circumstances upon which that judgement was given, is the proper mode of presenting the error to an appellate jurisdiction, for review and reversal. If no exception be taken, or if it do not appear what evidence was given to the judge, upon this collateral inquiry in regard to the competency of the evidence, all must be presumed to have been *795 legal and right. If the jury, in finding a verdict against the prisoner, have committed a mistake, and given undue credit to the testimony, the proper corrective is an application for a new trial, to the court which tried the cause; and if there be any mode of bringing to the consideration of the appellate court, the error of the court below in overruling the application, it would be by a bill of exceptions, stating all the proofs which were offered to the jury. The bill of exceptions must, in either case, adapt itself to the nature of the error complained of, and shew precisely wherein it was committed. It is upon the former ground alone that this case is brought before u's.
If, therefore, in the case now under consideration, the error complained of was, that the judge had admitted testimony of dying declarations which was incompetent, because the deceased, when he made them, was not under the apprehension of impending death, and was not of mental capacity to testify, we must refer to the record to ascertain, whether the matters therein stated shew, that the judge must have erred in admitting this evidence; and, in considering this question, we must view it exclusively as a question of mere competency, wholly distinct and apart from any consideration of the weight it might have been entitled to with the jury. The evidence would not be the less competent, though the court might think the jury would have done right in wholly disregarding it.
In this bill of exceptions, it is expressly stated, that the judge was of opinion, that the deceased was conscious of his approaching death, at the time the questions were put to him, and his answers thereto were given; and also that he was in his right mind and understood the questions. The evidence, to sustain this opinion in regard to the mental capacity of the deceased, was, (as it is stated in the bill of exceptions) that many witnesses, who saw the deceased in the interval between the time he received the wound and his death, and at the time the questions were put to him, gave evidence, that he was in his right mind. In regard to *796 the consciousness of the deceased of his impending death, the only direct testimony in the record, bearing upon this point, is the affirmative answer of the deceased to the question which was asked him, “ Do you think you are going to die?” But the consciousness of approaching death may be collected as well from the circumstances of the case (as from the nature of the wound and the state of the body) as from expressions used by the deceased. Woodcock’s case, 2 Leach C. C. 563. Dingler’s pase, Id. 638. John’s case, 1 East’s P. C. 357. This court, therefore, has clearly no warrant for pronouncing, that the opinion of the judge, as to the sanity of the deceased, and his consciousness of approaching death, was erroneous, unless it can be contended, that the facts stated in the record, furnish such conclusive proof that the deceased was unsound in his mind, and unconscious of imminent death, that it could not be disproved by other evidence however direct and cogent. What are the facts as stated in the record upon this subject?
It appeared, that the deceased received a stab with a knife on Thursday night; that from the time he received the wound until his death, which was sometime in the day of Sunday following, for much the greater part of the time (in consequence of the wound) he was unable to speak at all, and when he was able to speak, he could only utter a short word or two at a time; that the only answers he made to the inquiries that were propounded to him, were the words “ yes sir,” responding to three of the questions; and when a fourth question was put, he was unable to answer it. Whatever inferences the jury would have been warranted in drawing from such circumstances, to throw discredit upon the evidence arising from these answers thus given, this court cannot pronounce, that the condition of the deceased, as exhibited upon these proofs, could not possibly have been consistent with proof of a competent sanity of mind, and of a consciousness of approaching death.
In deciding then, whether, under the circumstances in the bill of exceptions stated, the evidence of the death-bed *797 declarations, therein stated, was incompetent evidence and ought not to have been allowed, it must be borne in mind, that in this record, the deceased is adjudged to have been a man sound in his mind, and conscious of standing on the brink of eternity; and that if this adjudication was erroneous, the bill of exceptions has been so framed as not to bring it into question; and that therefore it is now irreversible.
It was argued by the petitioner’s counsel, that though it is true, in general, that the dying declarations of a person who has received a mortal wound, made under apprehensions of death, are admissible in criminal prosecutions for the homicide ; yet, that the dying declarations, which are so admissible, must be dying declarations of a person in a situation to give a full and complete account of the facts of the transaction,'—not only to tell a part of the truth, but the whole truth. The court can not sustain this principle, in the latitude with which it is applied. If facts be stated, which are obviously designed by the party who states them, to be connected with other facts which he is about to disclose, and to be qualified by them, so that the narrative should form one intire and complete history of the whole transaction ; and before the purposed disclosure is made, it be interrupted, and the narrative remains unfinished; such partial declaration would not be admissible in evidence. The declaration which was offered in evidence in Finn’s case, 5 Rand. 701. may be referred to in illustration of this point. But, if the declaration state facts distinctly, and, as far as the declaration goes, it does not necessarily appear, that the facts thus stated were designed to be connected with some other facts, which may be supposed to form a part of the full and complete account of the transaction, it would be going too far to reject altogether the matter thus disclosed, upon any presumption of law, that the narrator was precluded by his situation (he being sound in his mind) from giving a full and complete account of the transaction, or upon any presumption of fact that the court could form, *798 that what was disclosed was only a part of the truth, and the whole truth of the case. It cannot be contended, that the evidence would be rendered incompetent from the circumstance that the deceased was not in a situation to Tcnow all the facts. It does not appear in the record, what was the question last propounded to the deceased, nor is there any evidence whatever, of the cause which rendered him unable to answer it.' If his situation was such as to disable him, from any other cause, independent of the state of his reason, from giving a full and complete account of-the transaction, and from telling the whole truth, not merely a part of the truth, that was a matter for the decision of the jury, and not of the court. Even if it were true, that a supervening disability had abridged the narrative, which, possibly, under other circumstances, might have been given by the deceased, still the question, whether the matter disclosed amounted to a full and complete account, was a question properly left to that tribunal, in which the law vests the power of deciding upon the credit of witnesses, and which alone can determine, from the circumstances of the case, whether a witness has told the whole truth,, as well as a part of the truth, and nothing but the truth. If the court can exercise the power of. deciding from the face of the testimony, that a witness of sufficient mental capacity, was not a competent witness, because he was unable or refused to answer some particular inquiry; and if the court has the power, moreover, of pronouncing, that the disclosures which he has- made, must necessarily have fallen short of a full and complete account of the transaction, or of such an account of it as is worthy to be listened to and weighed by the jury; it would seem to lead to dangerous inroads upon the province of juries. The presumption, that the deceased was not in a situation to give a full and complete account, is derived from Edmunds’s evidence, that he had put a fourth question to the deceased, but he was unable to answer it. The reasonableness and the strength of this presumption depend much upon circumstances. There is nothing in the *799 evidence, to shew that the question, last propounded to the deceased, had any relation to the homicide, and that the matter inquired about formed a part of a full and complete All account of the transaction ; much less, that the information sought must necessarily have been that which a person, in a situation to give such an account, could not but have been able to tell. Before wo can be warranted in drawing the important inference, attempted from Edmunds’s testimony, it would be material to know not only the pertinency of the .question to the matter in hand, but also the interval which elapsed between the answer to the third question, and the putting the fourth. If the force of that testimony was susceptible of explanation, and might be varied by other proofs, then, even if this were a question of competency to be decided by the judge, this court can not, as this record is framed, undertake to pronounce, that such explanations and proofs were not submitted to the judge, as the foundation of his decision.
It was, moreover, objected in the argument, that the information obtained from the deceased, was but the answers “ Yes, sir,” to questions, which were leading questions. It is laid down in the books, that leading questions, that is, such as instruct a witness how to answer on material points, are not allowed on the examination in chief: for to direct witnesses in their evidence, would only serve to strengthen that bias, which they are generally so much disposed to feel, in favor of the party that calls them. 1 Stark. L. Ev. 123. Still, it will be found, the rule is not of universal application ; for there are cases withdrawn from its influence, where it is allowed by the courts to be necessary to lead the mind of the witness to the subject of inquiry. It has been said, that it is difficult to lay down any precise rules as to leading questions, and how far it may be necessary to particularize, in framing the questions, must depend on the circumstances of each particular case; 1 Stark. L. Ev. 123. note (u). Wherever this rule is treated of, cases are presupposed, where there is a subject of litigation depending,—■ *800 where the witness, to whom answers are suggested in the forms of the questions, has been summoned by one of the parties to that litigation ; and where the witness is in a situation which exposes him to a suspicion of bias in favor of the party who calls him. But is there to be found in the law, any principle which would warrant the extension of the rule to a case like the present, and would require that the examination of a dying man as to the cause of his death, should conform to a technical strictness? Here was no matter of litigation, civil or criminal, depending: no prosecution so far as appears, had been instituted, or was known to the dying man; no conceivable connexion between him, who was putting the questions to him, and any interest likely to be subserved by the answers which were sought for; and no bias to be suspected in the mind of the deceased in favor of any interest on this side of the grave.
The answers to these questions would have been more satisfactory, had they responded more fully the circumstances of the homicide. But this court cannot pronounce that they are inadmissible, because they are mere monosyllables—“Yes, sir.” The law has no where defined what shall amount- to dying declarations, or the form in which they shall be uttered. It might be unsafe that it should do so. Whether the declarations are such as entitle them to be regarded as dying declarations to be offered in evidence, must depend upon the temper of the deceased when he made them, and upon the circumstances under which they were made. So far as the effect of such declarations is to be weighed by the jury, the court, upon this record, has no power to interfere. The jury were cautioned by the judge at the trial, that they ought to disregard the testimony altogether, unless they should believe from the evidence in the case, that the deceased understood the questions put to him, and answered them understanding^: and even if they should so believe, they ought, in weighing the testimony, to take into consideration the manner in which the questions were put and the answers obtained, and also the probability that *801 the questions and answers do not give a full account of the facts of the case. If the answers of the deceased formed, in the consideration of the jury, an essential part of the proofs in the case, then the verdict they have found, after this solemn caution, has pronounced that the deceased did understand the questions, and answered them understandingly, and that the testimony, notwithstanding the circumstances which seemed to impair its credit, was entitled to their belief. There may have been other evidence, satisfactory as to those circumstances, before the jury; and for aught that appears in the bill of exceptions, the court also, in deciding upon the question of competency, may have been influenced by proofs omitted to be embodied in the case. The objections which have been taken to the form of the questions, and the manner in which they were answered, as well as other objections in behalf of the prisoner, derive their force, for the most part, from a suspicion, unsubdued by the decision of the court (irreversible as has been shewn) that the deceased laboured under a want of mental capacity to testify. If we regard him as a man beyond question of sound reason, and his responses as flowing from a rational and deliberate mind, it seems difficult to distinguish the evidence now under consideration, from that of other dying declarations.
Upon the whole, a large majority of the court is for refusing the writ of error. This court might have given a very different judgement, had the record been so framed as to bring the errors complained of fully before them. Any mistakes which have been committed by the jury, are not within our cognizance; and if any errors were committed by the judge upon the matters submitted to him, the bill of exceptions has not been so framed as to bring those matters within our consideration.
Writ of error denied—•Dissentiente, judges Vield, II. II. Taylor and Scott.